UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25019-COOKE/O'SULLIVAN

JOEY D. GONZALEZ,

    Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER is before the Court on Defendant's motion to dismiss, ECF No. 4, and pro se Plaintiff's motion to strike Defendant's certification and request for limited discovery, ECF No. 13. All motions have been opposed and are ripe for adjudication. For the reasons stated below the Court will **GRANT** the motion to dismiss and **DENY** the motion to strike. Additionally, the Court will **DENY** limited discovery into the scope-of-employment issue.

### FACTUAL BACKGROUND

This case stems from a dispute between Plaintiff Joey D. Gonzalez ("Mr. Gonzalez") and Clifford Ramsey ("Mr. Ramsey"), dating back to 2016. At the time Mr. Gonzalez and Mr. Ramsey were coworkers, both working for the U.S. Department of Agriculture ("USDA") in Miami, Florida. *See generally* ECF No. 1-1 (amended complaint). Mr. Gonzalez was also president of the local chapter of the National Federation of Federal Employees ("NFFE" or "the union"), which represented both Mr. Gonzalez and Mr. Ramsey.

On August 16, 2016, Mr. Ramsey emailed Mr. Gonzalez, asking for his assistance in his capacity as union president. ECF No. 1-1 ¶ 9. Mr. Ramsey wanted to file a discrimination complaint with the union's help against Mr. Gonzalez's supervisor, the Administrative Officer of the USDA in Miami, Florida ("the administrative officer"). *Id.* As an African American man, Mr. Ramsey alleged that the administrative officer had discriminated against him on account of his race. *Id.* On August 18, 2016, Mr. Gonzalez met with Mr. Ramsey. *Id.*

¶ 10. Mr. Gonzalez explained to Mr. Ramsey that he did not believe the union could prevail in a grievance against the administrative officer, and that he did not believe Mr. Ramsey had sufficient evidence to sustain his allegations of discrimination. *Id.* ¶ 11. As part of his explanation, Mr. Gonzalez related to Mr. Ramsey a prior incident that involved one employee calling another a racial slur. *Id.* ¶ 10.

On September 12, 2016, Mr. Ramsey emailed NFFE, complaining about Mr. Gonzalez, and stating Mr. Gonzalez had used a racial epithet to describe him. ECF No. 1-1 ¶ 12. On October 12, 2016, Mr. Ramsey emailed USDA personnel to similarly complain about Mr. Gonzalez. *Id.* ¶ 13. On November 4, 2016, Mr. Ramsey filed a discrimination complaint with the USDA Office of Civil Rights, raising similar allegations about Mr. Gonzalez's use of a racial slur to describe Mr. Ramsey. *Id.* ¶ 14. On December 12, 2016, Mr. Gonzalez's supervisor told him that he had received a threatening email from Mr. Ramsey. *Id.* ¶ 15. As a result of these threats, the USDA reassigned Mr. Gonzalez to the USDA location in Fort Lauderdale, Florida. *Id.* ¶ 16. On January 26, 2017, Mr. Gonzalez found in his office two printed emails from Mr. Ramsey addressed to USDA, containing allegedly false and threatening information concerning Mr. Gonzalez. *Id.* ¶ 17. Mr. Gonzalez alleges that as a result of these false statements by Mr. Ramsey, he was placed on a performance improvement plan, and eventually dismissed from USDA. *Id.* ¶ 18.

## PROCEDURAL HISTORY

Mr. Gonzalez originally filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County ("the state court"). Plaintiff's first amended complaint, now the operative complaint in this action, raises a claim for defamation, including libel and slander (Count I), a claim for intentional infliction of emotional distress (Count II), and seeks injunctive relief under Florida law (Count III). ECF No. 1-1. The amended complaint was filed against Mr. Ramsey on February 23, 2018. *Id.*

On December 9, 2020, Defendant the United States of America ("the government") removed this action to this Court. ECF No. 1. Along with its notice of removal, the government filed a certification by Ariana Fajardo Orshan, U.S. Attorney for the Southern District of Florida ("the Westfall Act certification"), certifying that Mr. Ramsey "was acting within the course and scope of his employment at the time of the alleged events set forth in

the Amended Complaint." ECF No. 1-2. In its notice of removal, the government explains that pursuant to this certification the United States of America should be substituted for Mr. Ramsey as the proper defendant in this action, and that the action should be construed as an action under the Federal Tort Claims Act ("FTCA"). ECF No. 1 ¶¶ 4–5. Accordingly, the government stated removal was proper under 28 U.S.C. § 2679(d)(2) (stating actions should be removed upon certification of the Attorney General). *Id.* ¶ 7.

On December 10, 2020, the government moved to dismiss the amended complaint. ECF No. 4. The government argues that dismissal is appropriate because (1) the United States is immune from suit unless it expressly waives immunity; (2) the FTCA does not waive immunity for libel and slander claims like the ones raised here; (3) the FTCA requires the exhaustion of administrative remedies, which Mr. Gonzalez has failed to do.

Mr. Gonzalez opposed this motion, and simultaneously moved to strike the government's certification. ECF No. 13. Mr. Gonzalez does not oppose the immunity or exhaustion arguments,[1] but contends that certification is improper because Mr. Ramsey was not acting within the scope of his employment when the events underlying the amended complaint took place. As such, Mr. Gonzalez argues that the Court should strike the certification, substitute Mr. Ramsey as the proper defendant, deny the motion to dismiss, and remand this matter to state court. Alternatively, Mr. Gonzalez requests limited discovery into the scope-of-employment question. *Id.* at 11–12. Mr. Gonzalez presents the Court with a deposition of Mr. Ramsey from a different judicial proceeding. ECF No. 13-10. This deposition, argues Mr. Gonzalez, presents specific evidence sufficient to warrant limited discovery.

The government opposes Mr. Gonzalez's motion to strike. ECF No. 14. The parties agree that the threshold issue in this matter is whether the government properly certified that Mr. Ramsey acted within the scope of his employment. Additionally, the parties agree that District of Columbia law applies to this threshold issue.

---

[1] Because Mr. Gonzalez does not respond to these arguments, the Court considers them waived for the purpose of this motion. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned") (citation omitted).

## LEGAL BACKGROUND

Under the Federal Employees Liability Reform and Tort Compensation Act of 1988—commonly known as the Westfall Act—federal employees have absolute immunity "from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). "When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Id.* at 229–30 (citing 28 U.S.C. §§ 2679(d)(1), (2)).

A certification submitted pursuant to the Westfall Act "carries a rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted as the defendant." *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). "To rebut the certification, the plaintiff must allege, in either the complaint or a subsequent filing, specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of [their] employment." *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (quotation and citation omitted). Where a plaintiff comes forward with specific allegations or facts "that, if true, would establish that the defendants were acting outside the scope of their employment," a court may authorize limited discovery and an evidentiary hearing on the scope-of-employment issue. *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003).

To determine "whether an employee acted within the scope of [their] employment, [courts] consider the substantive law of the jurisdiction where the employment relationship exists." *Vrobel*, 724 F.3d at 221. In the District of Columbia, courts apply the test of the Second Restatement of Agency, which provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits; [and]
>> (c) it is actuated, at least in part, by a purpose to serve the master [. . .]

*Id.* (citing Restatement (Second) of Agency § 228 (1958)). District of Columbia courts apply the "scope-of-employment test very expansively, in part because doing so usually allows an injured tort plaintiff a chance to recover from a deep-pocket employer rather than a judgment-proof employee." *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008).

## LEGAL STANDARDS

On a motion to dismiss, the Court "accept[s] the factual allegations supporting a claim as true and draw[s] all reasonable inferences in favor of the nonmovant." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). A defendant may move to dismiss for lack of subject matter jurisdiction based on a facial attack, challenging that plaintiff has not "sufficiently alleged a basis of subject matter jurisdiction, [even if] the allegations in his complaint are taken as true for the purposes of the motion." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

Courts "liberally construe pro se pleadings and hold them to 'less stringent standards' than [courts] apply to formal pleadings that lawyers draft. Nevertheless, [courts] cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citations omitted).

## DISCUSSION

The parties agree the threshold question is whether Mr. Ramsey was acting within the scope of his employment at the time of the events alleged in the amended complaint. The parties also agree that District of Columbia law controls. Accordingly, the Court considers whether Mr. Ramsey's actions: (1) were the kind he was employed to perform; (2) occurred substantially within authorized time and space limits; and (3) were actuated, at least in part, by a purpose to serve his employer. For the reasons stated below, the Court concludes that based on the allegations and facts presented, Mr. Gonzalez has not met his burden to rebut the presumption that Mr. Ramsey's actions occurred in the scope of his employment. Accordingly, the Court will grant the government's motion to dismiss and deny Mr. Gonzalez's motion to strike and request for limited discovery.

### I. Whether Mr. Ramsey's actions were the kind he was employed to perform.

The first prong of the scope-of-employment test consists of two disjunctive parts: "To qualify as conduct of the kind [they were] employed to perform, the [employee's] actions must have either been of the same general nature as that authorized or *incidental to* the conduct authorized." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (quotations and citations omitted). "Conduct is incidental so long as it is foreseeable—that is, it must be a direct outgrowth of the employee's instructions or job assignment." *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1332 (D.C. Cir. 2014) (citations and quotations omitted). The foreseeability test is a low bar that "focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Ballenger*, 444 F.3d at 664 (citation omitted). Thus, seemingly extreme actions such as shooting or raping a customer could meet the test where such actions arose in relation to an employment-related dispute. *Id.* (collecting cases). Similarly, the test is met where an employee makes an allegedly defamatory statement during a work-related call, *id.*, or during a work-related investigation, *see Upshaw v. United States*, 669 F. Supp. 2d 32, 42 (D.D.C. 2009) (collecting cases). Despite the flexibility of the test, the conduct must still be a "direct outgrowth" of the "employee's instructions or job assignment." *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995), *overruled on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007). Thus, where conduct is "completely unrelated to [an employee's] official responsibilities," it is not foreseeable. *Id.* at 1424–25.

Here, Mr. Gonzalez alleges that Mr. Ramsey made a series of defamatory statements while lodging a workplace complaint. Specifically, Mr. Gonzalez alleges that Mr. Ramsey met with him to discuss a workplace grievance Mr. Ramsey had against the USDA administrative officer in Miami, Florida. *See* ECF No. 1-1 ¶¶ 9–10; ECF No. 13-7 at 12–13 (initial correspondence between Mr. Ramsey and Mr. Gonzalez preceding their meeting). Mr. Gonzalez further alleges that Mr. Ramsey—seemingly dissatisfied with the outcome of this meeting—proceeded to make defamatory statements concerning Mr. Gonzalez when he: (1) emailed NFFE, the union, to complain about the meeting, ECF No. 1-1 ¶ 12; (2) emailed USDA personnel to complain about the meeting, *id.* ¶ 13; (3) filed a complaint with the USDA Civil Rights Office containing defamatory statements related to the meeting, *id.* ¶ 14; (4)

6

emailed Mr. Gonzalez's supervisor with defamatory statements related to the meeting, *id.* ¶ 15; (5) made subsequent threats and defamatory statements related to the meeting, *id.* ¶¶ 16–18.

Based on Mr. Gonzalez's allegations, the underlying dispute or controversy here concerns an effort by Mr. Ramsey to file a discrimination complaint against the administrative officer in Miami, Florida. Mr. Ramsey's defamatory statements are all a direct outgrowth of this effort, and Mr. Gonzalez does not allege otherwise. Mr. Gonzalez does provide a job description for Mr. Ramsey's position, and argues that because filing complaints is not in the job description, Mr. Ramsey's actions do not meet the first prong of the scope-of-employment test. ECF No. 13 at 7. However, despite not being in the job description provided by Mr. Gonzalez, the government presents evidence that pursuing a wrongful discrimination claim "through the filing of a grievance with the Union, or through the filing of a complaint" was conduct Mr. Ramsey was authorized to perform. *See* ECF No. 14 at 5–6 (explaining how these actions were authorized under federal regulations for employees like Mr. Ramsey). Accordingly, the Court finds that Mr. Gonzalez has not sufficiently alleged that Mr. Ramsey's actions were not a direct outgrowth of actions he was authorized to perform, and thus has failed to meet his burden to show the first prong of the scope-of-employment test has not been satisfied.

II.   **Whether Mr. Ramsey's actions occurred substantially within authorized time and space limits.**

To show a defendant fails to satisfy the second prong of the scope-of-employment test, a plaintiff must generally allege the "conduct occurred outside of [the office] or outside of normal working hours." *Myvett v. Williams*, 638 F.Supp.2d 59, 67 (D.D.C. 2009). Here, Mr. Gonzalez acknowledges that "[Mr.] Ramsey's conduct could have occurred within the confines of his workplace. However, USDA's regulations require that employees be on release time when communicating with [the USDA Office of Civil Rights]." ECF No. 13 at 7 (citing to ECF No. 13-11 at 8). But the regulation Mr. Gonzalez cites states otherwise. According to this regulation, USDA "*will* afford employees (aggrieved person/complainants, representatives, and witnesses) reasonable time and opportunity *during official business hours* to participate in the [Equal Employment Opportunity] complaint(s) process." ECF No. 13-11 at

8 (emphasis added) (copy of USDA Departmental Regulation #4300-007). Because Mr. Gonzalez appears to acknowledge that the conduct occurred substantially within authorized time and space, and has not otherwise alleged in his complaint, the Court finds Mr. Gonzalez has not met his burden to overcome the Westfall Act certification as to the second prong of the scope-of-employment test. *See also Upshaw*, 669 F. Supp. 2d at 42 (finding second prong satisfied where plaintiff failed to allege defamatory statements at issue occurred outside of business hours).

### III. Whether Mr. Ramsey's actions were actuated at least in part, by a purpose to serve his employer.

To overcome the third prong of the test, a plaintiff must show an employee's act was "solely for the servant's personal benefit" and "not done for the employer at all." *Schecter v. Merchs. Home Delivery, Inc.*, 892 A.2d 415, 428 (D.C. 2006); *see also Allaithi*, 753 F.3d at 1333 ("Local [D.C.] law requires an employee be solely motivated by his [or her] own purposes for consequent conduct to fall outside the scope of employment."). The third prong is satisfied where the defendant was motivated "at least in part" by a desire to serve the employer. *Jacobs*, 724 F.3d at 222–23; *Schecter*, 892 A.2d at 428. Accordingly, a plaintiff must allege that the defendant acted without any desire to simultaneously serve their employer. Like the first prong, the "intent criterion focuses on the underlying dispute or controversy, not on the nature of the tort[.]" *Stokes*, 327 F.3d at 1216.

Here, Mr. Gonzalez makes almost no allegations concerning Mr. Ramsey's intent with respect to the underlying dispute—Mr. Ramsey's complaint against the Miami, Florida administrative officer. It appears from the face of the amended complaint, ECF No. 1-1 ¶¶ 9–11, and the correspondence between Mr. Ramsey and Mr. Gonzalez, ECF No. 13-7 at 12–13, that this dispute was a bona fide, if perhaps non-meritorious, grievance. The evidence provided by Mr. Gonzalez suggests Mr. Ramsey initiated this grievance because he felt he was "not given the respect nor the guidance that [he should have received] as a new employee." ECF No. 13-7 at 13. Accordingly, the Court agrees with the government that Mr. Ramsey's complaint appears motivated at least in part to serve the goals of the USDA anti-harassment policy. ECF No. 14 at 7. Because Mr. Gonzalez makes no allegations to the contrary concerning Mr. Ramsey's intent, the Court finds Mr. Gonzalez has not met his

burden to overcome the Westfall Act certification as to the third prong of the scope-of-employment test.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion to dismiss and **DENY** the motion to strike. Additionally, because the Court finds Mr. Gonzalez has not come forward with specific allegations or facts, that, if true, would establish Mr. Ramsey was acting outside the scope of employment, it will **DENY** Mr. Gonzalez's request to authorize limited discovery.[2] The Court will **DISMISS** this case **without prejudice**. The Clerk shall administratively **CLOSE** this case.

**DONE and ORDERED** in chambers, Miami, Florida, this 28th day of September 2021.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*John J. O'Sullivan, Chief U.S. Magistrate Judge*
*Counsel of record*

---

[2] The Court acknowledges Mr. Gonzalez has filed excerpts from a deposition of Mr. Ramsey in a separate proceeding. ECF No. 13-10. The transcripts appear to show—disturbingly—that Mr. Ramsey lied when he stated that Mr. Gonzalez had called him "the N word." *Id.* at 4. However, the transcripts do not show, and Mr. Gonzalez does not otherwise allege facts showing that: (1) Mr. Ramsey's actions were not a direct outgrowth of underlying authorized conduct (*i.e.* filing a workplace complaint against the administrative officer); (2) the tortious conduct that gave rise to this action occurred outside of the employer's authorized space and time limits; (3) Mr. Ramsey's underlying conduct was not—at least in part—motivated by a desire to serve the anti-harassment goals of the USDA.